IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TIMOTHY MCCLOSKEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **2:07cv634** |
| ) | **Electronic Filing** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Defendant. ) | |

## <u>OPINION</u>

Plaintiff Timothy McCloskey ("McCloskey") filed this action seeking a refund of taxes paid toward an assessment entered against him by the Internal Revenue Service ("IRS") for failure to remit $268,377 worth of withholding taxes on behalf of his small private business W.E. Brosius Company ("Brosius"). McCloskey contends that although he was a responsible person within the meaning of 26 U.S.C. § 6672 of the Internal Revenue Code ("IRC"), he did not willfully fail to pay over the withholding taxes and therefore is not personally liable for those taxes. The United States filed a counterclaim asserting McCloskey has willfully failed to pay the withholding taxes because after learning of the tax delinquencies he paid more than the amount owed to other creditors before remitting partial payment to the IRS. Presently before the court is the United States' motion for summary judgment. For the reasons set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim.  National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations."  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs."  Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992).  Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion.  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990).  If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted.  Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The relevant facts are as follows: McCloskey was the president and sole shareholder of Brosius during the tax periods in question. (Complaint at ¶ 4).  McCloskey had delegated a great

deal of financial responsibility to his bookkeeper and chief financial officer ("CFO") Kathleen

Lawson, including the filing of Brosius' tax returns.  (Doc. 29 pg. 2,3).  Lawson embezzled over

$800,000 from Brosius and failed to remit the employee withholding taxes  to the IRS for

nineteen consecutive quarters from June 30, 2000 through December 31, 2004.[1] (Doc. 28-2 pg.

35).  Lawson left McCloskey a resignation letter on September 1, 2004 stating that she was sorry

for what she had done.  (Lawson letter Doc. 28-4 pg. 2-3).  McCloskey admits that he knew

upon reading Lawson's letter that she had embezzled funds, but did not know how much.  Id. at

34.  Brosius received a letter from the IRS, dated September 14, 2004, thanking Brosius for its

recent inquiry and informing it that 940 Forms had not been filed for the nineteen quarters.[2]  (IRS

letter, Doc. 23-32 pg. 2).  By late September, McCloskey, with the help of his relatives and his

accountant, Daniel Goff, had calculated the amount of Lawson's embezzlement to be in the area

of $800,000.[3]  (Doc. 28-2 pg. 35).  Once McCloskey became aware of the magnitude of

Lawson's embezzlement he knew he could not continue to keep Brosius in business.  (Doc. 28-3

pg. 31).  McCloskey inquired about filing for bankruptcy, however he was informed by his

attorney that he did not have the necessary assets to do this.  (Doc. 28-2 pg. 35).  The attorney

advised McCloskey to begin winding down the business by paying his creditors, his employees,

and himself at a reduced rate.  Id. at 36.  McCloskey began paying off creditors; however, he

---

[1]Lawson pled guilty to both state and federal charges relating to the embezzlement and is
currently incarcerated. Lawson embezzled the funds by writing checks to herself and a company
she owned with her husband Wells Cargo. (Doc. 28-2 pg 47). Lawson used a bank stamp to
stamp legitimate checks from Brosius to creditors to make them appear to have been processed
by the bank and then wrote checks to herself instead. (Doc. 28-3 pg. 26).

[2]The letter also indicated 1120 forms had not been filed.  These forms are end of the year
tax forms which reflect the quarterly 941 Forms.

[3]The District Attorney assessed criminal liability against Lawson in the amount of
$513,810.  (Complaint at ¶ 7).

3

never remitted payment to the IRS for the unpaid trust fund taxes.[4]  Id. at 46.

On November 1, 2004 McCloskey entered into a buy/sell agreement and sold company inventory for $240,000.  (Doc. 23-30 pg. 2).  McCloskey used this money to pay off a personally secured Brosius loan with National City Bank.  (Doc. 28-3 pg. 31-33).  Between September 3, 2004 and January 31, 2006, Brosius had debits to its bank account in the amount of $828,143. (Doc. 23-36 pg 3 ¶ 13).  Funds Brosius received between September 3, 2004 and January 31, 2006 were for goods or services provided by Brosius prior to September 6, 2004.  (Id. at ¶ 15).

On March 1, 2005 McCloskey, as President of Brosius, signed and mailed Form 941 returns for Brosius' past due withholding taxes for the nineteen quarters at issue.  (Id. at ¶ 17). On September 12, 2005 the United States' Treasury made assessments against McCloskey pursuant to § 6672 for failure to truthfully account for, or pay over the federal income and employment taxes withheld from the wages of Brosius employees for the quarters at issue.  (Doc. 4 pg. 31 ¶ 5).  McCloskey then paid $51,302.14 towards the tax periods ending in June 30, 2000 through December 31, 2000.  (Id. at 33, ¶ 6).   His liability for those three tax periods have been satisfied.  (Id.).  The remaining  assessment against McCloskey with penalty, statutory additions, accrued interest and costs as of June 18, 2007 was $325, 695. 42.  (Id.  at ¶ 10).

Employers are obligated under the IRC to withhold federal income and social security taxes from their employees' wages, and to hold such monies in trust for the United States. See 26 U.S.C. §§ 3102, 3402, 7501.  Employers must remit these withheld sums to the government on a

---

[4]McCloskey indicated he decided to handle the matter of withholding taxes as follows:

Q.  Did he give you any advice with regard to taxes?

A.  No. Well, I shouldn't say that.  I don't know whether it was him (Campbell) or Dan, but obviously immediately we started paying the withholding taxes from that point on.  The rest was basically a wait and see situation since we didn't know what periods were filed, what the amounts were until they were able to come up with a number.

(Doc. 28-2 pg 36).

quarterly basis. <u>Id</u>.  The IRS is required to credit employees for the withheld taxes regardless of whether the employer actually has remitted payment of these funds.  <u>In re RIBS-R-US, Inc.</u>, 828 F.2d 199, 200 (3d Cir. 1987) (citing <u>Slodov v. United States</u>, 436 U.S. 238, 243, (1978)).  As a result of this obligation on the government and to ensure employer compliance, Congress enacted § 6672 of the IRC which imposes a penalty of personal liability, up to 100% of the amount of the taxes due, on responsible persons who wilfully fail to turn over the withholding taxes to the IRS.[5]  26 U.S.C.A. § 6672(a) (West Supp.1994).  By holding responsible persons personally liable for failing to pay over the withholding taxes, § 6672  protects the United States from becoming an unwilling partner in every business that struggles or fails.  <u>Lee v. United States</u>, 951 F. Supp. 79, 83 (W.D. Pa. 1997).

In order for personal liability to arise under § 6672, two criteria must be met: (1) the individual against whom the penalty is assessed must be a responsible person,  (2) who has willfully failed to pay over the withholding taxes to the IRS.  <u>Greenberg v. United States</u>, 46 F.3d 239, 242 (3d Cir. 1994) (citing <u>United States v. Carrigan</u>, 31 F.3d 131, 133 (3d Cir. 1994) & <u>Brounstein v. United States</u>, 979 F.2d 952, 954 (3d Cir.1992)).  An individual will be relieved of liability if their conduct fails to meet either element.  <u>Greenberg</u>, 31 F. 3d at 242.

A § 6672 assessment against a responsible person is equivalent to the assessment of a tax. <u>Brounstein</u>, 979 F.2d at 954 (citing 26 U.S.C.A. § 6671(a) & <u>In re Ribs-R-Us, Inc.</u>, 828 F.2d at 200).  Once the IRS assesses a tax, a rebuttable presumption arises that the assessment is correct. <u>Psaty v. United States</u>, 442 F.2d 1154, 1160 (3d Cir.1971).  Thus, the plaintiff bears the burden

---

[5]The pertinent part of § 6672 is as follows:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

26 U.S.C.  § 6672.

of submitting evidence to show that the § 6672 assessment against him was incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not willfully fail to pay the amount due to the IRS.  Brounstein, 979 F.2d at 954 (citing Psaty, 442 F.2d at 1160 & Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990)).

McCloskey was assessed penalty of 100% of the unremitted withholding taxes due by Brosius.  McCloskey does not assert that the amount assessed against him was wrongly calculated.  He also does not dispute that he is a responsible person within meaning of § 6672(a).  Instead, his dispute centers on the belief that § 6672(b) liability cannot been established because he did not "wilfully fail" to remit the withholding taxes.

To avoid § 6672  liability, McCloskey bears the burden of coming forward with sufficient evidence to prove by a preponderance that he did not wilfully fail to remit the taxes held in trust for the government.  See Brounstein, 979 F.2d at 954; accord United States v. Running, 7 F.3d 1293, 1297 (7th Cir.1993); United States v. McCombs, 30 F.3d 310, 318 (2d Cir.1994).  The burden on the taxpayer is not relieved when the United States files a counterclaim.  Psaty, 442 F.2d at 1159-1160; Brounstein, 979 F.2d at 954.  The applicable law and the facts of this case do not support McCloskey's argument that he, as a responsible person, did not willfully fail to remit Brosius' withholding taxes.

McCloskey clearly is a "responsible person" within the meaning of  § 6672.  "Responsibility is a matter of status, duty, or authority, not knowledge."  Greenburg, 46 F.3d at 242.  Significant rather than exclusive control over a company's finances is sufficient to establish an individual's status as a responsible person.  Brounstein, 979 F.2d at 954 (citing, Quattrone, 895 F.2d at 927). "The authority that permits control carries with it a nondelegable duty to ensure that withholding taxes are duly collected and paid over to the government."  Purcell v. U.S., 1

F.3d 932, 937 (9th Cir. 1993).[6]  Failure to meet this duty results in the willful failure to pay over to the government the taxes that are due.  Id.

Willfulness is a "voluntary, conscious and intentional decision to prefer other creditors over the Government."  Quattrone, 895 F.2d at 928.  This willfulness standard is less stringent than the criminal standard in that it does not require evidence of deviousness or an intention to defraud the government, just a conscious decision to pay other creditors before the government. Wall v. United States, 592 F.2d 154, 163 (3d. Cir. 1979).  Accordingly, "a responsible person acts willfully if he pays other creditors in preference to the IRS knowing that taxes are due." Quattrone, 895 F.2d at 928.  It is irrelevant that the available funds were used to satisfy other debts in order to keep the business going.  Greenberg, 46 F.3d at 244.  When a responsible person uses corporate funds to satisfy debts with other creditors  after acquiring knowledge of an IRS delinquency, willfulness is established as a matter of law.  Purcell, 1 F.3d at 938 (distinguishing Slodov, 436 U.S. 238 & citing Mazo v. U.S., 591 F.2d 1151, 1157 (5th Cir. 1979)).

A responsible person also acts willfully if he demonstrates a reckless disregard for whether taxes have been paid.  United States v. Vespe, 868 F.2d 1328,1335 (3d Cir. 1989).  The "reckless disregard" standard is met if the taxpayer "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily. "  Carrigan, 31 F.3d at 134 (quoting Wright v. United States, 809 F.2d 425, 427 (7th Cir.1987)).  Reckless disregard also is established when a responsible person fails to investigate or correct mismanagement after being notified that withholding taxes have not been paid.  Greenberg, 46 F. 3d at 244 (citing Vespe, 868 F.2d at 1335).

McCloskey contends that he cannot be held liable for willfully failing to pay over the

_____

[6]In Purcell, the sole shareholder and company president was held liable for the full amount of the withholding taxes his CFO had embezzled. The court held that the plaintiff's status as sole shareholder and company president came with a duty to ensure that trust taxes were in fact being remitted by his company.

withholding taxes because prior to Lawson's letter he had no reason to suspect that she had been stealing the funds and no duty to investigate whether mismanagement had occurred. After he received that letter it took him and his relatives several months to figure out where she had hidden the delinquent tax notices and how much she had failed to remit to the IRS.[7] (Doc. 29 pg. 5-7). And by the time all of this was accomplished all of the company funds had been expended. Thus, he could not have willfully failed to pay over the taxes because he never had reason to know that the taxes had not been paid or that any amount due could not be paid.

This argument has no merit for several reasons. First, McCloskey, as president and sole shareholder of Brosius, could not delegate his duty to make sure that the taxes were actually being remitted.[8] Purcell, 1 F.3d at 937; Greenberg, 46 F.3d at 244 (citing Vespe, 868 F.2d at 1335). Thus, his decision to make Lawson his CFO and vest in her great responsibility and authority over the use of corporate funds, including payment of trust taxes, did not extinguish his duty to remain apprised of Brosius' compliance with the IRC.

Second, even assuming that McCloskey as a responsible person who did not act willfully during the time he believed Lawson was paying the quarterly taxes when due, he knew he had not

---

[7]Lawson had, among other things, been hiding the completed tax forms and the delinquent tax notices in her office ceiling tile. (Doc. 28-3 pg. 16).

[8]McCloskey testifed in his deposition that he never saw nor asked to see the Form 941 forms that Lawson was supposed to be remitting to the IRS. He stated:

Attorney: So [Lawson] signed them. So, did you ever seen any of those?
McCloskey: *I think only after the fact.*
Attorney: But after the fact you did see actual completed 941 employment tax returns for each of the quarters?
McCloskey: *No, not for each of the quarters. I might have seen one or two of them. You know. That's all I saw.*
Attorney: Did you know if there was a return that she filled out or a check she filled out for each of the quarters that are at issue?
McCloskey: *No. I don't know.*

(McCloskey deposition, Doc. 28-2 pg. 21).

maintained independent verification of Brosius' IRC compliance and "had no idea" whether Lawson had paid any taxes over a substantial period time at the point in time when he first became aware of her misconduct.  Thus, when he received Lawson's letter he knew that Brosius' tax liability could be substantial.

Third, someone contacted the IRS on behalf of Brosius shortly after learning of Lawson's embezzlement, which indicates that there was an immediate recognition that corporate taxes might not have been paid. (Doc. 23-36 pg. 2 ¶¶ 10,11 &  Doc. 23-32 pg. 2, letter from IRS to Brosius).  Brosius received a letter from the IRS dated September 14, 2004  thanking it for its recent inquiry and reporting that Form 940 and Form 1120 returns had not been received for all the nineteen quarters that Lawson had failed to pay the taxes.  (Doc. 23-32 pg. 2).  At that point McCloskey knew Lawson had not submitted the taxes for almost five years and he had not verified Brosius' tax compliance during this time.

A responsible person during the time taxes are incurred who only later becomes aware of non-payment acts wilfully under § 6672(b) if he pays other creditors before paying the IRS, even if the money specifically withheld is gone.  Vespe, 868 F.2d at 1334.  Wilfulness also is met when the responsible person acts with reckless disregard of whether the withholding taxes are or have been paid.[9]  Carrigan, 31 F. 3d at 134.  Establishing that one should have known and could have easily ascertained whether trust taxes were being turned over to the government is enough to establish reckless disregard.  Wright v. United States, 809 F.2d 425, 427 (7th Cir. 1987) (quoted with approval in Carrigan, 31 F.3d at 134).

McCloskey, as sole shareholder and President of Broisus, was in the position to easily

---

[9]McCloskey admits that Brosius did not maintain a separate account for the trust fund taxes.  Although this is not required under law, having a separate account would allow funds to be monitored and assure their payment to the IRS rather than other creditors.  Attorney: Was there ever money set aside to pay the employment taxes on a quarterly basis?  McCloskey: *No. Not specifically, they would have been paid out of the same lump sum of money, accounts receivable.*  Attorney: So it is fair to say that there was no [account] set aside for the trust fund portion of the employment taxes either, the withholding?  McCloskey: *No.* (McCloskey deposition, Doc. 28-2 pg. 22).

ascertain whether Lawson had paid the taxes.  Upon learning of her embezzlement he knew or should have known that the potential amount due to the IRS could be substantial.  At that juncture he could not turn a blind eye to the occurrences in his business and the level of trust he had placed in Lawson.  His lack of actual knowledge of the specific amount owed does not shield him from liability.  <u>Phillips v. United States</u>, 73 F.3d 939, 943 (9th Cir. 1996) ("we think gross negligence is enough to establish reckless disregard [for] if a high degree of recklessness were required the purpose of the statute would be thwarted, just by compartmentalizing responsibilities within a business (however small) and adopting a 'hear no evil-see no evil' policy....") (quoting with approval <u>Wright</u>, 809 F.2d at 427).

McCloskey received notice that Brosius' employment taxes had not been submitted for nearly five years through a letter from the IRS dated September 14, 2004.  McCloskey's response to a United States' request for admission indicates that as of September 2004 he knew Lawson had embezzled money in part by destroying company checks and payments for employment taxes. (Doc. 23-24 pg. 5 ¶ 2).  Bank records indicate that between mid September of 2004 and January 31, 2006, McCloskey paid over $828,143 to creditors while remitting only $51,302 to the IRS . (Doc. No.s 23-26 through 23-29, 23-33).  McCloskey also admits that as of late November 2004 he knew of the unpaid employment taxes. (Doc. 28-2 pg. 37).  And he concedes and bank records show that after that point in time he signed checks paying to creditors more than the amount of the unpaid withholding taxes ultimately discovered to be due.[10]

Moreover, that McCloskey recognized a substantial amount was likely owed to the IRS prior to Brosius' payment of other creditors is established through other aspects of the record. Daniel Goff, McCloskey's accountant, stated in his deposition that once they had discovered that Lawson had embezzled $800,000, "we talked about how we [were] going pay these, two things to deal with, [] the bank, National City and the IRS. And there was no way he had any assets that

---

[10]Documents indicate that after November 2004,  McCloskey paid out on behalf of Brosius over $348,320 to creditors, including National City Bank, vendors, Brosius employees and himself. The total amount of un-remitted taxes was $268,377. (Doc. 30 pg. 2).

would be near what he [needed] to pay those off." (Doc. 28-3 pg. 31). McCloskey thus knew before entering into the agreement to sell part of Brosius that he owed the IRS a substantial amount of money.  Thereafter, he chose to pay National City before the IRS. [11]

As previously noted, willfulness is the voluntary conscious decision to pay other creditors in preference to the IRS.  No evil motive or fraudulent purposes is needed. In re Branagan, Jr., 345 B.R. at 166.  McCloskey knew that he likely owed the IRS a substantial sum for back-due taxes and proceeded to pay other creditors without ascertaining the precise amount and whether there would be sufficient funds to pay the withholding taxes.  Given these undisputed facts and drawing every reasonable inference in favor of McCloskey, the record shows without question that McCloskey acted recklessly when preferring other creditors prior to November of 2004 and thereafter knowingly and purposefully paid other creditors after realizing that he did not have enough money to pay both the IRS and the creditors..

McCloskey's  reliance on Slodov v. United States, 436 U.S. 238 (1978), to support his argument that he did not willfully fail to pay the withholding taxes before late 2004 or early 2005 when he gained knowledge of the actual dollar amount owed is misplaced.  McCloskey asserts that the Court in Slodov  held that § 6672 was not intended to impose personal liability without personal fault.  This position is a misreading of the Court's opinion.

In Slodov, the Supreme Court held that a responsible person does not act willfully in paying other creditors when the tax liability accrued prior to the person becoming a responsible person.[12] Id. at 259-60.   Numerous courts have recognized that Slodov is inapplicable where, as

---

[11]According to records, once money was received from the buy/sell agreement McCloskey paid outstanding Brosius loans from National City which he and his wife had personally guaranteed. McCloskey tries to argue that he did not know he owed the IRS money until March of 2005.  After November 2004, McCloskey knew Brosius owed a substantial amount of back due withholding taxes and thus any creditor he paid was in preference to the IRS.

[12]In Slodov, the plaintiff was an outsider who purchased a business with unpaid tax liabilities and was led to believe by the sellers that these liabilities would be paid prior to finalization of the sale.

here, the assessed individual was a responsible person at all material times. See Wood v. United States, 808 F.2d 411 at 416 (5 th Cir. 1987); Purcell, 1 F.3d 931; In re Equipment Fabricators Inc., 990 F.2d. 1257 (9 th Cir. 1993); In re Branagan Jr., 345 B.R. 144 (E.D. Pa. 2006); Schultz v. United States, 19 Cl. Ct. 280 (1990). These courts have not interpreted Slodov to mean that a responsible person is not liable if *he* did not ***personally*** fail to pay the taxes. As emphasized by the Purcell court, a responsible person cannot delegate his or her duty to pay the withholding taxes. Purcell, 1 F.3d at 937. Because McCloskey admits he was a responsible person both before and after the obligations at issue accrued, Slodov provides no shelter from his self-created predicament. See Wood, 808 F.2d 411 at 416 (citing, Mazo, 591 F.2d at 1154).

McCloskey's argument that he did not willfully fail to pay the taxes because he did all that he could to see that they were paid after he knew the exact dollar amount of the deficiencies likewise has no merit. The courts have straightforwardly rejected such a limitation on § 6672 liability. See Wood, 808 F.2d 411  (rejecting taxpayer's argument that he did not willfully fail to pay back due taxes because he paid accruing taxes through several quarterly payments after learning of the delinquency).

McCloskey's reliance on Feist v. United States, 607 F.2d 954 (Cl. Ct. 1979), similarly is misplaced. In Feist, just as in Slodov, the court declined to extend liability to the plaintiff because he was the newly acquired owner of a corporation who only discovered the tax delinquencies just before his ownership became finalized. Feist., 607 F.2d at 961-62. The Feist court concluded that the taxpayer had made all reasonable efforts to pay off his predecessor's debt after learning of the tax delinquencies. Id. Thus, the Feist court concluded that the taxpayer had not wilfully failed to pay the withholding taxes because the taxpayer had not been a responsible person during the periods of initial tax delinquency and had arranged to have all taxes paid immediately upon learning of the deficiency. Id. at 962.

In contrast, McCloskey was a responsible person for all the time periods in question. (Doc. 29 pg. 9). He admits that he knew early on that at least some amount of back due taxes were owed. He thereafter made a calculated decision to pay other creditors before determining

12

the full amount owed to the IRS.  Thus, his argument that he did all he could to see that the taxes were paid is belied by the record.

McCloskey's reliance on <u>Godfrey v. United States</u>, 748 F.2d 1568 (Fed. Cir. 1984) as requiring personal fault as a necessary element of wilfulness also is misplaced.  <u>Godfrey</u> is easily distinguishable because Godfrey was an outside director of a publicly-held corporation who did not own a significant proportion of the company's stock and did not have authority to sign the company's checks.  <u>Id</u>.  Thus, the personal fault issue in <u>Godfrey</u> pertained to the taxpayer's status as a responsible person, not willfulness.  <u>Id</u>.

Here, McCloskey was the President of Brosius, a private corporation, owned all the stock and had the authority to sign all company checks.  He also reviewed Brosius' payment of creditors. (Doc. 28-2 pg. 16-17).  Thus, McCloskey cannot analogize himself to the plaintiff in <u>Godfrey</u>.

 McCloskey's reliance on <u>Winter v. U.S.</u>, 196 F3d. 339, 347 (2d Cir. 1999), for the proposition that a court may determine a party's willfulness as a matter of law only when the facts are undisputed and application of the law to those facts will reasonably support only one ultimate conclusion is correct.  But McCloskey admits that as of late November 2004 he was aware of unpaid employment taxes.  At that time Brosius had sufficient funds to pay the taxes but no payments were made to the IRS; payments instead were made to other creditors.  (Doc. 30 pg. 2). In addition, Brosius' accountant stated in his deposition that after discovering Lawson's fraud around Labor Day of 2004 they were more concerned with determining what vendors were and were not paid than with checking into IRS obligations.  (Doc. 28-3 pg. 15).  And after the magnitude of the embezzlement became more clear, it became apparent that Brosius had the resources to pay certain creditors or the IRS, but not both.  National City Bank and other creditors were paid in full while the IRS was not paid.   Under these circumstances only one ultimate conclusion can be reached: McCloskey was a responsible person who willfully failed to pay the IRS and thus is personally liable for the amount owed.   Accordingly, the United States' motion for summary judgment requesting liability against McCloskey for the full amount

assessed against him must be granted.[13]


Date: September 15, 2009


                                        s/ David Stewart Cercone
                                        David Stewart Cercone
                                        United States District Judge


cc:     William A. Buck, Esquire
        Leech, Tishman, Fuscaldo & Lampl LLC
        Citizens Bank Building
        525 William Penn Place
        30th Floor
        Pittsburgh, PA 15219

        Daniel J. Healy, Esquire
        U.S. Department of Justice
        Tax Division
        P. O. Box 227
        Ben Franklin Station
        Washington, DC 20044

        Albert W. Schollaert, AUSA
        United States Attorney's Office
        Suite 4000
        United States Post Office & Courthouse
        700 Grant Street
        Pittsburgh, PA 15219

---

[13]McCloskey's pending motion to file a sur-reply brief will be denied.  McCloskey seeks to emphasize that he did make payments on the back-due taxes; that he was willing to pay any trust fund delinquencies and communicated his intent to the United States – to no avail; and after discovering Lawson's years-long theft, he had to investigate the company's books to determine the amount owed, which investigation took months to conclude through no fault of his own. Plaintiff's Motion for Leave to File Sur-reply (Doc. No. 33) at ¶ 8.  McCloskey asserts that these aspects of the record place this case in a unique factual setting because he "was the victim of an extensive scheme to defraud his business out of hundreds of thousands of dollars," and the combination of facts presents "an issue of first impression." Id. at ¶ 9.  Every aspect of the record McCloskey raises in support of filing a sur-reply already has been taken into account in arriving at the disposition set forth above.  Thus, the additional briefing would not change the result or the analysis underlying it.

14